**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

Ira R. Deiches, Esquire
**DEICHES & FERSCHMANN**
A Professional Corporation
**25 Wilkins Avenue**
**Haddonfield, NJ 08033**
**(856)428-9696**
**Attorneys for Debtor and Debtor-in-Possession**

In the Matter of:

BENNETT ENTERPRISES, INC.,

               Debtor and Debtor-in-Possession.

Case No. 20-23761

Chapter 11

Judge: Jerrold N. Poslusny, Jr.

Hearing Date: February 26, 021
                    11:00 a.m.

**CERTIFICATION OF IRA R. DEICHES IN SUPPORT OF DEBTOR'S MOTION FOR AUTHORITY TO REJECT CONTRACT FOR SALE OF LIQUOR LICENSE**

Ira R. Deiches, Esquire, of full age, hereby certifies that:

1. I am a member of Deiches & Ferschmann, A Professional Corporation, attorneys for Bennett Enterprises, Inc., Debtor and Debtor-in-Possession herein ("Debtor").

2. This certification is submitted in support of Debtor's motion (the "Motion") for an Order authorizing and approving Debtor's rejection of a contract (the "Contract") with 42nd Place Liquor, LLC, for the sale of Debtor's liquor license for the adjusted price of $825,000.00, subject to further reduction by the offset of sums claimed due by the buyer's affiliate and Debtor's former landlord, 42nd Place, LLC.

3. Among the questions implicated in the consideration of the Motion is whether the rejection of the Contract will result in a benefit to Debtor's estate.

4. In the plainest terms, Debtor's activities in contemplation of this Court's approval of rejection of the Contract demonstrate significant benefit to the estate.

5  I am in receipt of 3 Letters of Intent from 3 different parties interested in purchasing Debtor's liquor license once the path to such a transaction is clear.

6. The 3 offers in hand are for $1,000,000.00, $1,000,000.00+ (sic), and $1,050,000.00. Copies of these offers are attached.

7. I am excited to advise Debtor's report that additional offers are expected.

8. These early expressions of interest signal that after rejection of the Contract, when Debtor will be able to earnestly market its liquor license, the bidding competition will be spirited.

9. Substantial benefit to the estate will flow from rejection of the Contract.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: February 25, 2021

Ira R. Deiches

February 16, 2021

Bennett Enterprises, Inc.
Attn: James Bennett, President

Re: Sale of Plenary Retail Consumption License No. 0509-33-009-003

Dear Mr. Bennett:

This letter will confirm the outline of the terms and conditions in which the Buyer, Rick A Robinson, (Buyer) would enter into a Purchase and Sale Agreement with Bennett Enterprises, Inc. (Seller) sole owner of the liquor license referenced above (the "License").

We propose the following terms and conditions:

1.) <u>Purchase Price and Term of Payments.</u>

The purchase price (the "Purchase Price") for the License shall be $1,000,000. The Purchase Price shall be payable as provided herein and as further defined in the Purchase and Sale Agreement to be negotiated by both parties. The entire purchase Price (after credit for any deposits paid on account of the Purchase Price) shall be paid for as follows:

i. Within ten (10) days of the execution of a mutually acceptable formal Purchase and Sale Agreement, Buyer shall cause a Ten Thousand Dollar ($ 10,000) deposit to be made to Seller's attorney and shall be held in accordance with the terms of the Purchase and Sale Agreement and any ancillary agreements negotiated by the parties.

ii. Upon closing, Buyer shall pay Seller Nine Hundred Ninety Thousand Dollars ($990,000), representing the balance of the Purchase Price. Such closing shall transfer to Buyer the License and all of Seller's rights, title and interests in the License.

2. <u>Title.</u>   Seller shall convey to Buyer good and marketable title to all assets free and clear of any and all violations, restrictions and encumbrances.

2. <u>Compliance with ABC Laws</u>

The purchase shall comply with all applicable Federal and State laws, which shall include, but not be limited to, those laws and regulations regarding the sale and distribution of alcoholic beverages in the State of New Jersey.

3. <u>Contingencies</u>

The duties of the parties to perform their obligations under the Purchase and Sale Agreement shall be conditioned upon Seller's obtaining Orders of the United States Bankruptcy Court for the District of New Jersey in case 20-23761pending under chapter 11 of the Bankruptcy Code, in which Seller is Debtor and Debtor-in-Possession, approving Seller's rejection of any other contracts for the purchase of the License and approving Buyer's purchase of the License.

4. <u>Liquor License Transfer</u>

Subsequent to the satisfaction of the Contingencies noted above, Buyer and Seller shall file for transfer of the License, with all reasonable and timely actions and documents to effectuate the transfer. Buyer shall be responsible for expenses associated with the transfer except for any legal fees or accounting fees incurred by Seller.

5. <u>Closing.</u>

All parties shall use their best efforts to schedule closing on the first business day after the approval of the transfer of the License. The closing shall be held at Buyer's office or at the office of Buyer's New Jersey attorney.

6. <u>Exclusivity</u>

Commencing on the date of the execution of this letter by Seller and ending on the Date of Closing or the termination of this transaction by Buyer, neither Seller nor its Principals shall, directly or indirectly (whether their respective representatives, agents or

otherwise), take any action, refrain from taking any action, or permit any action to be taken or not taken, which would reasonably be expected to impede the completion of the proposed transfer. The parties acknowledge, however, that the transfer is subject to Seller's receipt of higher or better offers for the License, as required by the Bankruptcy Code, and, Seller may engage in, without limitation, soliciting, initiating or knowingly encouraging the initiation of, or entertaining an offer from, conducting discussions with, or providing any information to, any third party other than Buyer and its representatives relating to the proposed transaction.

7. Cooperation and Good Faith.

   Seller and Buyer will proceed with the transactions contemplated herein on a prompt basis and will cooperate in good faith in the negotiation, preparation and execution of a mutually, acceptable Purchase and Sale Agreement.

8. Costs and Expenses of Transaction.

   Seller and Buyer shall each bear and be responsible solely for the costs and expenses incurred by it, him, her or them in connection with the transactions described herein including, without limitation, fees of their respective counsel, accountants and professionals, whether or not there is a closing of the transactions contemplated hereby.

The foregoing is intended to set forth only the mutual understandings of the Buyer and Seller at this point in time in relation to the proposed terms of the proposed transaction. Any obligation to proceed with the proposed transaction will only become binding on the parties hereto upon the execution and delivery of the Purchase and Sale Agreement and satisfaction of the contingencies noted herein.

Submitted:

_____
Managing Member

Dated: 2/16/2021

Accepted:

_____

Bennett Enterprises, Inc. by James Bennett, President


_____

Date

February 22, 2021

Bennett Enterprises, Inc.
Attn: James Bennett, President

Re: Sale of Plenary Retail Consumption License No. 0509-33-009-003

Dear Mr. Bennett:

This letter will confirm the outline of the terms and conditions in which the Buyer, Kurt Deuter, (Buyer) would enter into a Purchase and Sale Agreement with Bennett Enterprises, Inc. (Seller) sole owner of the liquor license referenced above (the "License").

We propose the following terms and conditions:

### 1.) Purchase Price and Term of Payments.

The purchase price (the "Purchase Price") for the License shall be $1,000,000 (+) depending on other interested parties. The Purchase Price shall be payable as provided herein and as further defined in the Purchase and Sale Agreement to be negotiated by both parties. The entire purchase Price (after credit for any deposits paid on account of the Purchase Price) shall be paid for as follows:

    i. Within ten (10) days of the execution of a mutually acceptable formal Purchase and Sale Agreement, Buyer shall cause a 10% deposit to be made to Seller's attorney and shall be held in accordance with the terms of the Purchase and Sale Agreement and any ancillary agreements negotiated by the parties.

    ii. Upon closing, Buyer shall pay Seller the remaining balance of the Purchase Price negotiated within the Purchase and Sale Agreement. Such closing shall transfer to Buyer the License and all of Seller's rights, title and interests in the License.

2. Title.   Seller shall convey to Buyer good and marketable title to all assets free and clear of any and all violations, restrictions and encumbrances.

2. Compliance with ABC Laws

The purchase shall comply with all applicable Federal and State laws, which shall include, but not be limited to, those laws and regulations regarding the sale and distribution of alcoholic beverages in the State of New Jersey.

3. Contingencies

The duties of the parties to perform their obligations under the Purchase and Sale Agreement shall be conditioned upon Seller's obtaining Orders of the United States Bankruptcy Court for the District of New Jersey in case 20-23761pending under chapter 11 of the Bankruptcy Code, in which Seller is Debtor and Debtor-in-Possession, approving Seller's rejection of any other contracts for the purchase of the License and approving Buyer's purchase of the License.

4. Liquor License Transfer

Subsequent to the satisfaction of the Contingencies noted above, Buyer and Seller shall file for transfer of the License, with all reasonable and timely actions and documents to effectuate the transfer. Buyer shall be responsible for expenses associated with the transfer except for any legal fees or accounting fees incurred by Seller.

5. Closing.

All parties shall use their best efforts to schedule closing on the first business day after the approval of the transfer of the License. The closing shall be held at Buyer's office or at the office of Buyer's New Jersey attorney.

6. Exclusivity

Commencing on the date of the execution of this letter by Seller and ending on the Date of Closing or the termination of this transaction by Buyer, neither Seller nor its Principals shall, directly or indirectly (whether their respective representatives, agents or

otherwise), take any action, refrain from taking any action, or permit any action to be taken or not taken, which would reasonably be expected to impede the completion of the proposed transfer. The parties acknowledge, however, that the transfer is subject to Seller's receipt of higher or better offers for the License, as required by the Bankruptcy Code, and, Seller may engage in, without limitation, soliciting, initiating or knowingly encouraging the initiation of, or entertaining an offer from, conducting discussions with, or providing any information to, any third party other than Buyer and its representatives relating to the proposed transaction.

7. <u>Cooperation and Good Faith.</u>

    Seller and Buyer will proceed with the transactions contemplated herein on a prompt basis and will cooperate in good faith in the negotiation, preparation and execution of a mutually, acceptable Purchase and Sale Agreement.

8. <u>Costs and Expenses of Transaction.</u>

    Seller and Buyer shall each bear and be responsible solely for the costs and expenses incurred by it, him, her or them in connection with the transactions described herein including, without limitation, fees of their respective counsel, accountants and professionals, whether or not there is a closing of the transactions contemplated hereby.

    The foregoing is intended to set forth only the mutual understandings of the Buyer and Seller at this point in time in relation to the proposed terms of the proposed transaction. Any obligation to proceed with the proposed transaction will only become binding on the parties hereto upon the execution and delivery of the Purchase and Sale Agreement and satisfaction of the contingencies noted herein.

Submitted:

_____
Managing Member
Dated: 2/22/2021

Accepted:

_____
Bennett Enterprises, Inc. by James Bennett, President


_____
Date

February _24_, 2021

Bennett Enterprises, Inc.
Attn: James Bennett, President

Re: Sale of Plenary Retail Consumption License No. 0509-33-009-003

Dear Mr. Bennett:

This letter will confirm the outline of the terms and conditions in which the Buyer, _Venicean Consulting_, LLC (Buyer) would enter into a Purchase and Sale Agreement with Bennett Enterprises, Inc. (Seller) sole owner of the liquor license referenced above (the "License").

We propose the following terms and conditions:

1.) Purchase Price and Term of Payments.

The purchase price (the "Purchase Price") for the License shall be $ _1,050,000_. The Purchase Price shall be payable as provided herein and as further defined in the Purchase and Sale Agreement to be negotiated by both parties. The entire purchase Price (after credit for any deposits paid on account of the Purchase Price) shall be paid for as follows: _One Million and Fifty Dollars — 00_ ~~xxx~~

  i. Within ten (10) days of the execution of a mutually acceptable formal Purchase and Sale Agreement, Buyer shall cause a _Fifty_ Thousand Dollar ($_50_,000) deposit to be made to Seller's attorney and shall be held in accordance with the terms of the Purchase and Sale Agreement and any ancillary agreements negotiated by the parties.

  ii. Upon closing, Buyer shall pay Seller _One Million_ ~~Thousand~~ Dollars ($_1,000_,000), representing the balance of the Purchase Price. Such closing shall transfer to Buyer the License and all of Seller's rights, title and interests in the License.

2. <u>Title.</u>  Seller shall convey to Buyer good and marketable title to all assets free and clear of any and all violations, restrictions and encumbrances.

2. <u>Compliance with ABC Laws</u>

The purchase shall comply with all applicable Federal and State laws, which shall include, but not be limited to, those laws and regulations regarding the sale and distribution of alcoholic beverages in the State of New Jersey.

3. <u>Contingencies</u>

The duties of the parties to perform their obligations under the Purchase and Sale Agreement shall be conditioned upon Seller's obtaining Orders of the United States Bankruptcy Court for the District of New Jersey in case 20-23761 pending under chapter 11 of the Bankruptcy Code, in which Seller is Debtor and Debtor-in-Possession, approving Seller's rejection of any other contracts for the purchase of the License and approving Buyer's purchase of the License.

4. <u>Liquor License Transfer</u>

Subsequent to the satisfaction of the Contingencies noted above, Buyer and Seller shall file for transfer of the License, with all reasonable and timely actions and documents to effectuate the transfer. Buyer shall be responsible for expenses associated with the transfer except for any legal fees or accounting fees incurred by Seller.

5. <u>Closing.</u>

All parties shall use their best efforts to schedule closing on the first business day after the approval of the transfer of the License. The closing shall be held at Buyer's office or at the office of Buyer's New Jersey attorney.

6. <u>Exclusivity</u>

Commencing on the date of the execution of this letter by Seller and ending on the Date of Closing or the termination of this transaction by Buyer, neither Seller nor its Principals shall, directly or indirectly (whether their respective representatives, agents or

otherwise), take any action, refrain from taking any action, or permit any action to be taken or not taken, which would reasonably be expected to impede the completion of the proposed transfer. The parties acknowledge, however, that the transfer is subject to Seller's receipt of higher or better offers for the License, as required by the Bankruptcy Code, and, Seller may engage in, without limitation, soliciting, initiating or knowingly encouraging the initiation of, or entertaining an offer from, conducting discussions with, or providing any information to, any third party other than Buyer and its representatives relating to the proposed transaction.

7. <u>Cooperation and Good Faith.</u>

Seller and Buyer will proceed with the transactions contemplated herein on a prompt basis and will cooperate in good faith in the negotiation, preparation and execution of a mutually, acceptable Purchase and Sale Agreement.

8. <u>Costs and Expenses of Transaction.</u>

Seller and Buyer shall each bear and be responsible solely for the costs and expenses incurred by it, him, her or them in connection with the transactions described herein including, without limitation, fees of their respective counsel, accountants and professionals, whether or not there is a closing of the transactions contemplated hereby.

The foregoing is intended to set forth only the mutual understandings of the Buyer and Seller at this point in time in relation to the proposed terms of the proposed transaction. Any obligation to proceed with the proposed transaction will only become binding on the parties hereto upon the execution and delivery of the Purchase and Sale Agreement and satisfaction of the contingencies noted herein.

Submitted: _[signature]_

Managing Member

Dated: 2-24-21

Accepted:

_____
Bennett Enterprises, Inc. by James Bennett, President


_____
Date